## Richmond

JEAN WILSON TRIMBLE HOFFMAN v. COUNTY OF AUGUSTA.

January 17, 1966.

Record No. 6088.

Present, All the Justices.

*Benham M. Black* (*Cochran, Lotz & Black*, on brief), for the appellant.

No brief filed or argument for the appellee.

CARRICO, J., delivered the opinion of the court.

On December 27, 1962, Jean Wilson Trimble Hoffman, the petitioner, filed three petitions praying for the correction of allegedly erroneous assessments on three tracts of land owned by her in the county of Augusta. The first petition related to taxes assessed on the land for the year 1960; the second for the year 1961, and the third for the year 1962.

The court entered orders permitting the filing of the petitions

By agreement, the three petitions were consolidated for hearing and were considered as one petition.

The county filed no responses or pleas to the petitions but on August 24, 1964, a final decree was entered stating that "the question of statute of limitations having been previously raised . . . the Court . . . is of the opinion that" the petitions were "not timely filed." The decree dismissed the petitions from the docket and to that decree the petitioner was awarded a writ of error.

The petitioner contends that under Code, § 58-1145 she had two years from the thirty-first day of December of each of the tax years in question, 1960, 1961 and 1962, within which to file her petitions. She says that since her petitions were filed on December 27, 1962, within the prescribed time in each instance, it was error for the trial court to dismiss the petitions.

We have not been favored with a brief on behalf of the county. For that reason, we are not informed as to what its position is with respect to this matter. Nor do we know, from the record, what argument the county advanced to the trial court to persuade it to dismiss the petitions.

It would appear, however, from the final decree, that the court was of opinion that petitioner should have sought relief within two years from the thirty-first day of December 1959, the year in which the last general reassessment of real estate became effective in the county. Under that view, December 31, 1961, would have been the last day for the filing of the petitions. Since they were not filed until December 27, 1962, the court apparently concluded that they were not timely filed.

If that was the basis upon which the petitions were dismissed, we cannot concur therein. We do not agree that the effective date of the last general reassessment was solely determinative of the time within which the petitioner was entitled to seek relief.

Code, § 58-1145, under which the petitions before us were filed, reads, in its pertinent parts, as follows:

"Any person assessed with county or city levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specially provided by law, within two years from the thirty-first day of December of the year in which any such assessment is made . . . apply for relief to the circuit court of the county or any city court of record of the city wherein such assessment was made. In such proceeding the burden of proof shall be upon the taxpayer

to show that the property in question is assessed at more than its fair market value or that the assessment is not uniform in its application. . . ."

In *Richmond* v. *Eubank*, 179 Va. 70, 18 S. E. 2d 397 and *St. Andrew's Ass'n* v. *City of Richmond*, 203 Va. 630, 125 S. E. 2d 864, this court ruled that the word "assessment," as used in Code, § 58-1145, had two meanings. It was held that in the first sentence of the Code section, " 'assessment' . . . can apply only to one thing, that is, the amount of the tax (the money) the individual is supposed to pay." It was stated that in the second sentence, however, "the word 'assessment' can only apply to the value of the property, and has nothing to do with the amount of the tax assessed upon the value of the property." 179 Va., at p. 80; 203 Va., at pp. 633, 634.

Although the question of a general reassessment was not involved, in each of these previously decided cases the assessment of the tax itself, rather than the fixing of the value of the real estate, was held to determine the question as to whether the application for relief had been timely filed.

The dual role of the word "assessment" is found in the various statutes relating to the authority of the localities to determine the valuation of real property, and to levy taxes based upon such valuation.

Code, § 58-780 provides for the general reassessment of real estate in certain counties every six years. It was under the authority of this section that the county of Augusta made its general reassessment in 1958, effective January 1, 1959.

Under Code, § 58-796 each commissioner of revenue is required to "commence, annually, on the first day of January, and proceed without delay to ascertain all the real estate in his county or city, as the case may be, and the person to whom the same is chargeable with taxes on that date. The beginning of the tax year for the assessment of taxes on real estate shall be January the first and the owner of real estate on that day shall be assessed for the taxes for the year beginning on that day."

In making the assessment of taxes for each year, Code, § 58-759 requires that taxes "shall be extended on the basis of the last general reassessment made prior to such year, subject to such changes as may have been lawfully made."

Under Code, § 58-763, the value of real estate, as ascertained at a general reassessment, "shall only be changed to allow the addition of

the value of improvements, or a total or partial deduction of the value of such improvements, except so far as the same are directed to be corrected by a court of competent jurisdiction or by the local board of equalization in the exercise of powers expressly conferred by law."

Code, § 58-839 requires the boards of supervisors of the counties, annually, to fix the amount of the county and district levies for the current year.

Thus, under the system of taxation provided by these Code sections, as related to the case before us, the assessment of the value of real estate is made periodically every six years at a general reassessment. But, annually, an assessment of taxes is made upon the real estate by using such fixed valuation, subject to any increase or decrease because of the addition or deduction of the value of improvements, and applying the tax rate fixed by the levy. In this system of taxation, the duality of the word "assessment" has been made clearly apparent by the legislature, so that all statutes affecting the system may be given force and effect.

So, too, has the legislature made clear that the remedy provided by Code, § 58-1145 shall be available to a landowner to attack an assessment in whichever of its two meanings the word is employed. By Code, § 58-1151 the legislature provided that the right to file an application for relief under Code, § 58-1145 "shall be construed to include assessments made at a general reassessment."

Had the legislature intended, as the trial court apparently held, that the remedy afforded by Code, § 58-1145 was to be limited solely to an assessment made at a general reassessment, there would have been little purpose in the enactment of Code, § 58-1151. Clearly, something in addition to relief against a periodic general reassessment was to be included in the remedy granted by the legislature. That was the right to complain against the annual assessment of "county or city levies or other local taxes on real estate," as set forth in the first sentence of Code, § 58-1145.

It was just "such assessment" by which the petitioner alleged that she was aggrieved. When the dual meaning of the word "assessment" is given effect in the petitioner's case, it logically follows that her petitions were timely filed. Her complaint was against the annual assessment of taxes in 1960, in 1961 and in 1962. Under Code, § 58-1145 she had two years from the thirty-first day of December of each of those years to seek relief. Her petitions were filed on

December 27, 1962, within two years from the end of the earliest year in question and she met, therefore, the statutory limitation.

Accordingly, we hold that it was error for the trial court to dismiss the petitions on the ground that they were not timely filed. The decree appealed from will be reversed, the petitions will be reinstated and the case will be remanded for further proceedings.

*Reversed and remanded.*